UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

                              :

ADELANTE ALABAMA WORKER    :
CENTER et al,                          :

                              :

                    Plaintiffs,  :               1:17-cv-9557-GHW

                              :

            -against-         :       MEMORANDUM OPINION

                              :        AND ORDER

UNITED STATES DEPARTMENT OF  :
HOMELAND SECURITY and OFFICE FOR :
CIVIL RIGHTS AND CIVIL LIBERTIES,  :

                              :

                   Defendants.  :

                              :

-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Before the Court are cross-motions for summary judgment in this Freedom of Information

Act ("FOIA") dispute between the Adelante Alabama Worker Center, the Detention Watch

Network, and the Greater Birmingham Ministries (collectively, "Plaintiffs") and the United States

Department of Homeland Security (the "DHS") and its component Office for Civil Right and Civil

Liberties (the "CRCL," together with the DHS, the "Defendants") that began with a September 8,

2016, request for a so called "super-recommendations memorandum" referenced in CRCL's

congressional report for its 2015 fiscal year.  Plaintiffs contend that Defendants have inappropriately

withheld material which is not protected by the deliberative process privilege, despite Defendants'

invocation of FOIA Exemption 5, and that Defendants have inappropriately withheld the identities

and professional backgrounds of certain experts who contributed to the report (the "Experts")

pursuant to FOIA Exemption 6.

       For the reasons that follow, Defendants are entitled to summary judgment as to a portion

of the records at issue.  However, for the remainder of the records, additional scrutiny is required—either through *in camera* review, or by subsequent re-review by Defendants.  Furthermore, the Experts' slight privacy interests in their identities and professional backgrounds are substantially outweighed by the publics' interest in disclosure of that information.  Accordingly, for the reasons articulated below, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## I.     BACKGROUND

On September 8, 2016 Plaintiffs submitted a FOIA request to Defendant CRCL "seeking disclosure of a document identified as a 'super-recommendations memorandum' concerning the Etowah Country Detention Center" in Alabama ("the Request").  Pls.' Local Rule 56.1 Statement (ECF No. 43) ("56.1") ¶ 1.[1]  That Request was the genesis of the instant litigation.

The CRCL is a component of Defendant DHS and is responsible for "review[ing] and assess[ing] information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of" the DHS.  6 U.S.C. § 345(a)(1).  In that role, the CRCL conducts on-site investigations at Immigration and Customs Enforcement ("ICE") and ICE-contracted immigration detention facilities.  Decl. of James V.M.L. Holzer, May 9, 2018 (ECF No. 40) ("Holzer Decl.") ¶ 16.  ICE operates under the jurisdiction of Defendant DHS. "During on-site investigations, CRCL utilizes competitively awarded contracted experts in the areas of medical care, mental health care, correctional security and operations, use of force, and environmental health and safety, as needed, to investigate complaints and make recommendations

---

[1] In the context of litigation as to FOIA requests, the Court does not typically require Local Rule 56.1 statements. However, as Plaintiffs have submitted such a statement, and the procedural history of the FOIA request is not in contention, the Court utilizes Plaintiffs' Local Rule 56.1 statement as a factual basis to describe the procedural history of Plaintiffs FOIA request.

concerning policies." *Id.* ¶ 17. The CRCL submits "an annual report . . . detailing[, *inter alia,*] any allegations of abuses of [civil rights and liberties] . . . and any actions taken by the Department [of Homeland Security] in response to such allegations." 6 U.S.C. § 345(b). On June 10, 2016, the CRCL released its report for its 2015 fiscal year (the "Report"). (ECF No 44-1).

The Report indicates that the CRCL responded to "numerous complaints" about a detention facility operated by ICE in Alabama, Report at 35, which has subsequently been identified as the Etowah County Detention Center (the "ECDC"). Holzer Decl. ¶ 20. The Report also states that, in response to over fifty complaints received since 2012, the CRCL sent a "super-recommendations memorandum" to ICE in May 2015 (the "Super-Recommendations Memo") "formally notifying [ICE] of [the CRCL's] long-standing and continuing concerns" regarding the ECDC. Report at 35. As described in the Report, the Super-Recommendations Memo highlighted "the seriousness of the'problems found in previous investigations [of the ECDC], the continued receipt of additional correspondence raising similar concerns, and CRCL's belief that additional fact-finding is unnecessary as [CRCL's] prior recommendations are likely not being fully implemented." *Id.* at 28-29. As a result, the Report describes the Super-Recommendations Memo as recommending "that ICE develop a comprehensive plan to address the deficiencies at the facility, address the issues raised in complaints opened since the 2012 site visit, and either transition the facility to the 2011 Performance Based National Detention Standards or cease use of the facility." Report at 35.

As stated above, Plaintiffs submitted the Request on September 8, 2016 seeking disclosure of the Super-Recommendations Memo. Receiving no response, Plaintiffs submitted an administrative appeal of the "constructive denial" of their FOIA request on October 20, 2016. 56.1 ¶ 2. On October 24, 2016, the DHS informed Plaintiffs that they had located "five responsive pages" to Plaintiff's FOIA request, but that there were withholding all five pages in their entirety "pursuant to exemption 5." *Id.* ¶ 3. That response mooted Plaintiffs October 20, 2016 appeal on

the basis of "constructive denial." *Id.* ¶ 5.

On November 10, 2016, Plaintiffs filed an administrative appeal as to Defendant DHS's utilization of FOIA Exemption 5. *Id.* ¶ 4. That appeal was granted on March 13, 2017 "to the extent that the FOIA request was remanded to DHS to provide an 'adequate explanation' for its invocation of [E]xemption 5." *Id.* ¶ 6. On May 23, 2017 the DHS, by letter, informed the plaintiffs that it "had been unable to determine the status of the remand and that DHS's 'lack of action must be viewed as final, giving [Plaintiffs] the right to pursue an appeal in the appropriate United States District Court. This decision is the final action of DHS concerning [Plaintiffs'] initial FOIA request . . . and FOIA [a]ppeal." *Id.* ¶ 7 (capitalization altered).

Plaintiffs filed this case on December 6, 2017. Subsequently, Defendants released 127 pages of responsive records, containing significant redactions. Those records consist of the Super-Recommendations Memo, the November 2, 2012 CRCL memorandum regarding ECDC, (ECF No. 40-2) at 7-22[2] (the "November 2, 2012 Memo"), as well as the four 2012 expert reports in the areas of corrections, medical care, mental health care, and environmental health and safety which informed the November 2, 2012 memorandum (the "Expert Reports"), and attachments cataloging certain recommendations and detainee complaints (the "Attachments") (collectively, the "Initial Release"). *See* Initial Release (ECF No. 40-2). On February 22, 2018, the Court directed Defendants to produce a *Vaughn* index no later than April 2, 2018, and for the parties to confer as to outstanding issues and submit a status letter to the Court describing any such issues. That letter was submitted on April 18, 2018. Joint Letter, April 18, 2018 (ECF No. 36) (the "Joint Letter").

The Joint Letter made it clear Plaintiffs do not challenge "the adequacy of Defendants' search." Joint Letter at 2. Rather, Plaintiffs objected to Defendants' invocation of exemptions 5

---

[2] As the Initial Release comprises several documents presented sequentially, each with its own individual pagination, the Court refers to the relevant ECF page number when citing to the Initial Release.

and 6 to withhold the following categories of information.[3]

(1) Names and professional backgrounds of subject-matter experts hired by CRCL whose reports are included in the responsive records, which Defendants have withheld citing exemption 6;

(2) Certain recommendations made by CRCL to Immigration and Customs Enforcement and Defendant Department of Homeland Security leadership in CRCL's May 28, 2015 memorandum—specifically, those that have already been publicly disclosed in CRCL's Fiscal Year 2015 Annual Report to Congress—which Defendants have withheld citing exemption 5 and the deliberative process privilege;

(3) The standards and/or methodology sections of the subject-matter experts' respective reports, which Defendants have withheld citing exemption 5 and the deliberative process privilege; and

(4) Factual findings and observations made by the subject-matter experts, which Defendants have withheld citing exemption 5 and the deliberative process privilege.

Joint Letter at 1.

Before the Court are the parties' cross motions for summary judgment as to Defendants' use of FOIA Exemptions 5 and 6 as described above. (ECF Nos. 38, 41). Alongside their motion for summary judgment, Defendants submitted their *Vaughn* index to the Court. (ECF No. 40-3) (the "*Vaughn* Index").

During the course of briefing, Defendants updated the Initial Release by voluntarily releasing some previously redacted information (the "Subsequent Release" or the "Released Records") (ECF No. 491-1). The Subsequent Release narrowed the issues before the Court, but did not fully resolve any of Plaintiffs' four categorical challenges quoted above. Defendants have not submitted an updated *Vaughn* Index. The motions were fully briefed by August 17, 2018, and are ripe for adjudication.

---

[3] For a discussion of the FOIA exemptions at issue *see* §§ III(A) and (B), below.

## II. LEGAL FRAMEWORK

### A. Summary Judgment Standard

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (quoting *Jones-Edwards v. Appeal Bd. of Nat'l Sec. Agency*, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)). A moving party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted). A party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). In resolving cross-motions for summary

judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

### B. FOIA

"Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and internal quotation marks omitted). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Id.* FOIA also contains affirmative disclosure and indexing requirements, which provide that "[e]ach agency . . . shall make available for public inspection in an electronic format . . . final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . . those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . . [and] administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(A)-(C). "As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass.").

For an agency to prevail on a summary judgment motion in a FOIA case, it "must demonstrate 'that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Ruotolo v. Dep't of*

*Justice, Tax Div.,* 53 F.3d 4, 9 (2d Cir. 1995) (quoting *Nat'l Cable Television Ass'n v. Fed. Commc'ns Comm'n*, 479 F.2d 183, 186 (D.C. Cir. 1973)). "[T]he defending agency [also] has the burden of showing that its search was adequate." *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir. 1994). "[S]ummary judgment in favor of the FOIA plaintiff" is appropriate "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption," but should be denied if the agency satisfies its burden "to show that requested material falls within a FOIA exemption." *Petroleum Info. Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1433 (D.C. Cir. 1992).

"FOIA specifies that a district court must conduct *de novo* review of an agency's claims to exemptions," *Lee v. Fed. Deposit Ins. Corp.,* 923 F. Supp. 451, 453 (S.D.N.Y. 1996), which "are to be narrowly construed with all doubts resolved in favor of disclosure," *Halpern v. Fed. Bureau of Investigation,* 181 F.3d 279, 287 (2d Cir. 1999). Agency affidavits or declarations "may justify summary judgment" if they are "sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 30 (D.C. Cir. 1998) (citation omitted); *see Halpern,* 181 F.3d at 293 ("blind deference is precisely what Congress rejected when it amended FOIA in 1974"). "Affidavits submitted by an agency are 'accorded a presumption of good faith.'" *Carney,* 19 F.3d at 812 (quoting *Safecard Servs., Inc. v. Secs. and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

### C. *Vaughn* Submissions

When an agency withholds records in a FOIA case and a complaint challenges such withholding, the district court must "determine the matter *de novo*, and may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ." 5 U.S.C. § 552(a)(4)(B). In such a case, "the burden is

on the agency to sustain its action." *Id.*

In 1973, in *Vaughn v. Rosen*, the Court of Appeals for the D.C. Circuit held that in order to assure "that allegations of exempt status are adequately justified . . . courts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments." 484 F.2d 820, 826 (D.C. Cir. 1973). Thus, when invoking a FOIA exemption, agencies submit a "*Vaughn* index"—a list of withheld documents and claimed exemptions—and a "*Vaughn* affidavit," describing the documents and the agency's rationale for withholding them. Requiring such submissions serves three goals:

> (1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, (3) and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Halpern*, 181 F.3d at 291 (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)). "The titles and descriptions of documents listed in a *Vaughn* index usually facilitate the task of asserting and adjudicating the requester's challenges to the Government's claims of exemption" by "giv[ing] the court and the challenging party a measure of access without exposing the withheld information." *N.Y. Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 439 (2d Cir.), *supplemented,* 762 F.3d 233 (2d Cir. 2014).

"Summary judgment is warranted on the basis of [*Vaughn*] affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (internal quotation marks and citations omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "[W]hat constitutes a 'reasonable' level of specificity [in a *Vaughn* affidavit] varies depending on the particular context," and specifically, which exemption is

being invoked. *Halpern*, 181 F.3d at 297 (finding level of specificity insufficient to invoke

Exemption 1, but sufficient to invoke Exemption 7(C)). Affidavits submitted by an agency "are

accorded a presumption of good faith." *Florez v. Cent. Intelligence Agency*, 829 F.3d 178, 182 (2d Cir.

2016) (quoting *Ctr. for Constitutional Rights v. Cent. Intelligence Agency*, 765 F.3d 161, 166 (2d Cir. 2014)).

*Vaughn* submissions are insufficient, however, where "the agency's claims are conclusory, merely

reciting statutory standards, or if they are too vague or sweeping." *Quinon v. Fed. Bureau of

Investigation*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,

608 F.2d 1381, 1387 (D.C. Cir. 1979)).

## III. DISCUSSION

### A. Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party other than an agency in litigation with the

agency . . . ." 5 U.S.C. § 552(b)(5); *see also Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S.

340, 352 (1979) ("Exemption 5 of the FOIA . . . provides that the affirmative disclosure provisions

do not apply to 'inter-agency or intra-agency memorandums or letters which would not be available

by law to a party other than an agency in litigation with the agency." (citing 5 U.S.C. § 552(b)(5))).

"Courts have interpreted Exemption 5 to encompass traditional common-law privileges against

disclosure, including the. . . deliberative process . . . privilege[ ]." *Nat'l Council of La Raza v. Dep't of

Justice*, 411 F.3d 350, 356 (2d Cir. 2005); *see also Sears*, 421 U.S. at 149 ("[I]t is reasonable to construe

Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil

discovery context."); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) ("Stated

simply, agency documents which would not be obtainable by a private litigant in an action against

the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege) are

protected from disclosure under Exemption 5." (citations and internal quotation marks omitted)).

A document fitting the criteria for withholding under Exemption 5 may nevertheless fall outside of Exemption 5 "if it closely resembles that which FOIA affirmatively requires to be disclosed: 'final opinions . . . made in the adjudication of cases,' 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,' and 'administrative staff manuals and instructions to staff that affect a member of the public.'" *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012) (quoting 5 U.S.C. § 552(a)(2)(A)-(C)).

## 1. Deliberative Process Privilege

Exemption 5 encompasses the deliberative process privilege, a privilege that protects records that are: "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356 (internal quotation marks omitted) (quoting *Grand Cent. P'Ship*, 166 F.3d at 482). This privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," as well as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Grand Cent. P'Ship*, 166 F.3d at 482 (citation omitted).

A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Grand Cent. P'Ship*, 166 F.3d at 482; *accord Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002); *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). In assessing whether a document is predecisional, courts also consider whether the government can: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in

temporal sequence, the decision to which it relates." *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quotations and citation omitted).

A document is "deliberative" if it is "actually . . . related to the process by which policies are formulated." *Stinson v. City of New York*, 304 F.R.D. 432, 435 (S.D.N.Y. 2015) (omission in original) (quoting *Sec. & Exchange Comm'n v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009)). "The privilege 'does not operate indiscriminately to shield all decision-making by public officials' such as 'routine operating decision[s].'" *N.Y. Times Co.*, 499 F. Supp. 2d at 514 (quoting *Schiller v. City of New York*, 04-cv-7922 (KMK) (JCF), 2007 WL 136149, at *12 (S.D.N.Y. Jan. 19, 2007)). "To determine whether a document is deliberative, '[c]ourts have looked to factors such as whether the document "(i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Id.* (quoting *Grand Cent. P'Ship*, 166 F.3d at 482).

There are however, well recognized exceptions to the deliberative process privilege. The privilege does not "protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'Ship*, 166 F.3d at 482). Additional and long-recognized exceptions to Exemption 5 include: (1) adoption, *i.e.*, "when the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public"; and (2) working law, *i.e.*, "when the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy." *Brennan Ctr. for Justice*, 697 F.3d at 195 (internal citations, alterations, and quotation marks omitted); *see also Sears*, 421 U.S. at 153 ("The affirmative portion of the Act, expressly requiring indexing of 'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions

to staff that affect a member of the public,' 5 U.S.C. § 552(a)(2), represents a strong congressional

aversion to secret (agency) law and represents an affirmative congressional purpose to require

disclosure of documents which have the force and effect of law." (internal citation and quotation

marks omitted)). Additionally, the deliberative process "privilege does not, as a general matter,

extend to purely factual material." *Hopkins*, 929 F.2d at 85.

Finally, "[v]oluntary disclosures of all or part of a document may waive an otherwise valid

FOIA exemption." *New York Times Co.*, 756 F.3d at 120 (quoting *Dow Jones & Co. v. U.S. Dep't of

Justice*, 880 F. Supp. 145, 150-51 (S.D.N.Y. 1995)). "In *Wilson v. CIA*, 586 F.3d 171 (2d Cir. 2009),

the Second Circuit held that requested information is deemed to have been officially disclosed only

if it (1) is as specific as the information previously released, (2) matches the information previously

disclosed, and (3) was made public through an official and documented disclosure." *New York Times

Co. v. Fed. Bureau of Investigation*, 297 F. Supp. 3d 435, 449 (S.D.N.Y. 2017)) (quoting *Wilson*, 586 F.3d

at 186) (internal quotation marks omitted). Subsequently, the Second Circuit has clarified that "the

'matching' aspect of the *Wilson* test [does not] require absolute identity. Indeed, such a requirement

would "make little sense. A FOIA requester would have little need for undisclosed information if it

had to match precisely information previously disclosed." *New York Times Co.*, 756 F.3d 100, 120

(2d Cir. 2014), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233

(2d Cir. 2014).

## 2. General Applicability of the Deliberative Process Privilege to the Released Records

There is no dispute as to the adequacy of the search which produced the Released Records.

*See* Joint Letter. Nor is there any dispute that the CRCL is a component of the DHS that, as

relevant here, provides reports and recommendations as to DHS and/or ICE policies and

procedures. Accordingly, there is no dispute, nor could there plausibly be a dispute, that the

recommendations and reports generated by the CRCL are generally predecisional—as the ultimate

decision on agency policy is not made by the CRCL—and contain deliberative material—as the reports and recommendations are, by definition, intended as information upon which the DHS and/or ICE can make final agency determinations.

As a result, Plaintiffs do not dispute that large sections of the Released Records are protected by the deliberative process privilege. Rather Plaintiffs contend that Defendants have been overbroad in their redactions, with the effect of withholding material that is subject to one of several exceptions to the deliberative process privilege at issue here. The Court discusses the issues specific to each category of documents in the Released Records in turn below.

### 3. Super-Recommendation Memo

The Court first considers Plaintiffs' challenges as to the remaining redactions of the Super-Recommendations Memo. For the reasons that follow, the Court defers adjudication of this issue pending *in camera* review of the Super-Recommendations Memo.

In the Request, Plaintiffs included a blockquote from the Report, which included the following paragraph regarding the Super-Recommendations Memo.

> CRCL issued the first of a new type of recommendations memorandum in FY 2015 to address long-standing concerns about specific detention facilities used by ICE. This new type of memorandum, colloquially termed a "super-recommendations memorandum," is an avenue to inform Component leadership of areas where there has been no significant implementation of CRCL recommendations despite repeated follow-up, CRCL continues to receive complaint allegations on the issues raised in the recommendations, and the issues presented raise serious civil rights concerns. In this instance, the memorandum addressed a detention facility in Alabama. CRCL highlighted the seriousness of problems found in previous investigations, the continued receipt of additional correspondence raising similar concerns, and CRCL's belief that additional factfinding implemented. In these limited circumstances, CRCL made significant and far-reaching recommendations to fix identified problems, *including a request that ICE no longer use the facility to house detainees.*

Request at 2 (quoting Report at 28-29) (emphasis added). Defendants, in connection with their motion for summary judgment, submitted the Holzer Declaration, which stated, in pertinent part, that the Super-Recommendations Memo "does not contain any recommendations relating to ICE's

continuing use of ECDC in the future to house detainees." Holzer Decl. ¶ 29. There is an obvious

tension between the language of the Report and Mr. Holzer's declaration.

In their briefing, Plaintiffs pointed out that, although the Report publicly disclosed that that

the Super-Recommendation Memo "recommended that ICE develop a comprehensive plan to

address the deficiencies at the facility, address the issues raised in complaints since the 2012 site visit,

and either transition the facility to the 2011 Performance Based National Detention Standards or

cease use of the facility," Report at 35, the entirety of the sections labeled "Recommendations" and

most of the section labeled "Conclusions" were redacted from the Super-Recommendations Memo

in the Initial Release, and none of the specific recommendations quoted above were released. Initial

Release at 5-6. In their original round of briefing, Plaintiffs contended that Defendants had waived

their privilege as to those publicly disclosed recommendations, which were, consequentially,

improperly withheld in the Initial Release.

Defendants tacitly agreed, at least in part, and, in the Subsequent Release, released portions

of the Super-Recommendations Memo which include recommendations that 1) "ICE should

develop a comprehensive plan to address the deficiencies identified at ECJ though previous site

visits and complaint investigations;" 2) "In developing its plan, ICE should address the issues raised

in the complaints open since 2012;" and 3) the ECDC "should transition to the 2011 Performance

Based National Detention Standards." Released Records at 6;[4] Defs.' Reply (ECF No. 48) at 7-8.

However, as Plaintiffs point out, "[n]otably absent in the [S]upplemental [R]elease is any information

concerning the recommendation, noted in CRCL's report to Congress, that ICE 'cease use of the

facility.'" Pls.' Reply (ECF No. 52) at 7 (quoting Report at 35). Defendants continue to contend

that the Super-Recommendations Memo does not contain a recommendation that ICE cease using

---

[4] As the Released Records, like the Initial Release, comprise several documents presented sequentially, each with its own individual pagination, the Court refers to the ECF page number when citing to the Released Records.

ECDC to house detainees. Second Decl. of James V.M.L. Holzer, July 13, 2018 (ECF No. 49) ¶ 7 ("The Super Rec. Memo contains neither a recommendation 1) that ICE either transition the facility to the 2011 Performance Based National Detention Standards or cease use of the facility or 2) that ICE cease using the facility.").

"Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption." *New York Times*, 756 F.3d at 114. "Plaintiff[s] ha[ve] the initial burden of showing prior disclosure" by pointing to publicly disclosed information that matches the information withheld, *Conti v. U.S. Dep't of Homeland Sec.*, 12-cv-5827-AT, 2014 WL 1274517, at *21 (S.D.N.Y. Mar. 24, 2014) (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992), and affidavits submitted by an agency "are accorded a presumption of good faith." *Florez*, 829 F.3d at 182 (quoting *Ctr. for Constitutional Rights*, 765 F.3d at 166). Waiver by disclosure "applies only when the requested information '(1) [is] as specific as the information previously released, (2) match[es] the information previously disclosed, and (3) was made public through an official and documented disclosure.'" *Conti*, 2014 WL 1274517, at * 21 (quoting *Wilson v. Cent. Intelligence Agency*, 586 F.3d 171, 186 (2d Cir. 2009).

Plaintiffs have satisfied their initial burden by pointing out that the CRCL expressly indicated, in its 2015 public Report to congress, that they had made a recommendation that ICE should "either transition the facility to the 2011 Performance Based National Detention Standards or cease use of the facility." Report 35. Defendants' argument to the contrary, that "Plaintiffs' papers provide no evidence . . . other than the statement in the CRCL Report to Congress" is unavailing. Defs'. Reply at 15. Indeed, it is difficult to imagine what more palpable evidence than the CRCL's official report to Congress Plaintiffs could possibly be expected to point to. As a result, the Court is presented with a contradiction between the CRCL's public statements, and Defendants' contentions.

While "*in camera* review is considered the exception, not the rule, *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 73 F. Supp. 3d 350, 357 (S.D.N.Y. 2014) (alterations omitted), here the Court has been presented with a situation in which *in camera* review is the appropriate and most efficient means to resolve the parties' dispute. In situations such as this, where "information contained in agency [declarations] is contradicted by other evidence in the record—then *in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information." *Am. Civil Liberties Union v. F.B.I.*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014) Furthermore, when the requested documents "are few in number and of short length *in camera* review may save time and money." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) (internal quotation marks omitted); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 90 F. Supp. 3d 201, 216 n.2 (S.D.N.Y. 2015) (citing *Carter*, 830 F.2d at 392-93).

Accordingly, *in camera* review of the Super-Recommendations Memo is appropriate. The Super-Recommendations Memo is a scant five pages in length. Plaintiffs have pointed to record evidence indicating that a recommendation that, under certain predicate conditions, ICE cease using ECDC to house detainees was made in the Super-Recommendations Memo. Defendants deny that such language is in the redacted portions of the Super-Recommendations Memo, despite their contrary representation to Congress. Rather than attempt to resolve the conflict between the language of the Report and the agency declarations in the abstract, the Court will review the document *in camera*.

Accordingly, the Court defers judgment as to the applicability of Exemption 5 to the redacted portions of the Super-Recommendations Memo pending its *in camera* review.

### 4. Expert Reports

Plaintiffs object that Defendants' redactions of the Expert Reports, even as narrowed by the Subsequent Release, are overbroad. Specifically, they contend that the Defendants redacted

standards and methodologies applied by the Experts which are not protected by the deliberative process privilege, and that Defendants applied too broad a brush in redacting the Experts' findings and analysis—redacting severable factual material alongside material properly withheld pursuant to Exemption 5. The Court considers each objection in turn.

### a. Standards and Methodologies

The Court cannot determine, on the record before it, that the Defendants have not improperly redacted material which constitutes the adopted policy, or working law, of the DHS and/or ICE. Accordingly, the Court defers adjudication as to this issue, and directs Defendants to re-review the Expert Reports and to update the *Vaugn* Index to address with specificity the concerns expressed below.

"When the contents of [a] document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public," that material has been adopted by the agency and may not be withheld pursuant to Exemption 5. *Brennan Ctr. for Justice at New York Univ. Sch. of Law*, 697 F.3d at 195. The Court is concerned that certain redactions appear to have withheld standards applied by the Experts in their analysis which may have been adopted by the DHS and/or ICE. For example, the Released Records include the following: "2. Analysis[:] ECDC's Telephone policy provides [redacted]." Released Records at 40. The natural conclusion of that phrase would be a statement of ECDC's existing telephone policy for detainees— which is most likely the adopted policy of DHS and/or ICE in that regard.

The parties have not fully addressed this issue in their briefing.[5] Nor does the *Vaughn* Index, which describes the redacted section as a "discussion of the subject matter expert's subjective findings, analysis, and proposed recommendation is response to specific detainee allegations," claim

---

[5] The Court notes that the issue here is not whether the standards or methodologies were previously disclosed, but whether those standards and methodologies constitute adopted policy or working law of the agency.

that the policy at issue is not the adopted of the DHS and or/ICE. *Vaughn* Index at 6. Mr. Holzer's declaration is somewhat contradictory on this topic, claiming both that applicable standards and methodology were disclosed when it "was reasonably servable from exempt information," which implies that some such material may have been withheld when it was not severable, and that the "redacted portions within sections marked with headings such as 'methodology,' 'applicable standards,' and 'findings' do not contain information concerning applicable standards . . ." Holzer Decl. ¶ 27.[6] Given the inadequacy of the record, the Court cannot conclude that severable discussion of adopted agency policy was not improperly withheld from the Expert reports.

As the record is currently insufficient for the Court to determine whether the redactions at issue were appropriate, the Court defers adjudication. Defendants are directed to re-review the Expert Reports, and to release any severable material which constitutes the adopted policy or working law of DHS and/or ICE. Defendants are further directed to update the *Vaughn* Index to specifically discuss whether any redacted standards and methodologies constitute the adopted policy or working law of the DHS and/or ICE, and to more specifically delineate Defendants' rationales for withholding each standard or methodology applied by the Experts.

### b. Severable Factual Material

The Court is also concerned that material which appears likely to be purely factual in nature and severable may nonetheless have been withheld by the DHS. However, on the record before it, the Court cannot conclude that Defendants' redactions were improper. Accordingly, the Court defers adjudication on this issue, and directs Defendants to re-review the Expert Reports consistent with the analysis below, and to update the *Vaughn* Index to adequately describe the rationale for

---

[6] To the extent it applies here, the Court further notes that Defendants' contention that certain redacted material "concerns a separate issue concerning standards then under consideration," Holzer Decl. ¶ 27, could refer to standards ultimately adopted by the DHS and/or ICE, or to standards which were not adopted—a distinction which may impact whether the redacted material at issue was properly withheld and which cannot be determined on the present record.

each remaining redaction.

An indicative example of this issue is on page forty of the Released Records, which reads as follows: "2. Analysis[:] Detainees are only issued a wrist band for identification purposes. Staff interviewed reported that the [redacted]." Released Records at 40. The natural conclusion of that sentence would be a recitation of what the interviewed ECDC staff said—which would likely be purely a recitation of facts.

The deliberative process "privilege does not, as a general matter, extend to purely factual material." *Hopkins*, 929 F.2d 81, 85 (2d Cir. 1991). Nonetheless, "where factual information is intertwined with deliberative policy discussions, disclosure may not be possible without revealing the protected deliberations." *Am. Civil Liberties Union v. Dep't of Def.*, 15-cv-9317-AKH, 2017 WL 4326524, at *7 (S.D.N.Y. Sept. 27, 2017).

> "Accordingly, a 'determination of which if any portions of an otherwise exempt document are nonexempt must begin with a consideration of the nature of the document as a whole. Disclosure of 'purely factual material' in otherwise exempt documents may be ordered only if the material 'is severable without compromising the private remainder of the documents.' More is required than merely plucking factual segments from the reports[;] there must be a sensitive reference to the relation of the factual segments to the report as a whole.'"

*Id.* (*quoting Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 85 (2d Cir. 1979)) (alteration in original).

When, as here, admittedly factual material is presented alongside material properly protected by the deliberative process privilege, the question is "whether these factual observations are "inextricably intertwined" with the privileged opinions and recommendations such that disclosure would "compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5," or whether they are "reasonably segregable" from the opinions and recommendations and therefore subject to disclosure. *Hopkins*, 929 F.2d 81, 85 (2d Cir. 1991) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 92 (1973)) (citing *Lead Indus. Ass'n* v. OSHA, 610

F.2d 70, 85 (2d Cir.1979)).

FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 626 (1982); *accord Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.").

Defendants have proffered that they engaged in a "substantial line by line review to ensure that the non-deliberative portions of the [E]xpert [R]exports—including those facts not inextricably intertwined with deliberative material—have been released." Defs.' Reply at 15 (citing Holzer Decl. ¶ 28). The presumption of good faith owed to that proffer remains undisturbed. *See Carney,* 19 F.3d at 812.

However, Defendants' have advanced an argument which leads the Court to conclude that their redactions of factual material may, despite being conducted in good faith, have nonetheless been overbroad. In their briefing, Defendants contend that "the premise that some factual information may exist within the redacted sections of the Consultant Reports . . . is immaterial: this factual information is protected because the 'authors' determinations of which facts were worthy on inclusion' in these portions is itself protected as a necessary component of the experts' deliberative process." Defs.' Reply at 13 (quoting *Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 456 (S.D.N.Y. 2018). While Defendant's are correct that, in certain circumstances, the selection of which facts to include in a document may reveal the author's subjective opinions formed as part of an agency's deliberative process, the Court cannot find, on the record presented, that rule to be applicable here.

The D.C. Circuit has opined that the key inquiry as to whether factual material can be withheld pursuant to the deliberative process privilege due its selective inclusion by the author is as to the relationship between the document and the ultimate decision made. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993). Accordingly, factual material which relates to a decision analogous to a "complex decision in an adjudicatory proceeding" can properly be withheld on this ground, where as "an investigative report prepared only to inform" cannot. *Id.* (comparing *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C. Cir. 1982) *with Montrose Chem. Corp. of California v. Train,* 491 F.2d 63, 71 (D.C. Cir. 1974)).

The Court finds that distinction relevant here. The Expert Reports, in general, discuss specific detainee complaints, followed by findings, analysis and recommendations. *E.g.* Released Records at 31. That structure is more in keeping with an "investigative report" into a specific question, than it is a "complex decision in an adjudicatory proceeding." Accordingly, on the record before it, the Court cannot find that any redactions of purely factual material in the Expert's Reports, on the basis that the selection of such material by the author would reveal the deliberative process of the agency, was proper.

The Court notes, however, that this analysis may only apply to the sections of the Experts' Reports which are responsive to cited detainee complaints. It may be the case that this concern is not raised as to the sections of the Experts' Reports concerning broader recommendations or summaries, *e.g.* Released Records at 42-43, where Defendants may have a stronger argument that the Experts' inclusion or exclusion of specific facts would be more revelatory of broader policy determinations, rather than investigation of a specific, disclosed, detainee complaint. It may also be the case that certain facts within the analysis of specified detainee complaints are inextricably intertwined with policy recommendations and can properly be withheld—the Court does not hold otherwise today. However, facts as to specific detainee complaints in the section of an Expert

Report discussing those detainee complaint are not *per se* protected by the deliberative process privilege simply due to their selection, as Defendants argue.

Unfortunately, the *Vaughn* Index is also insufficiently precise to permit the Court to determine whether severable factual material was impermissibly withheld. For example, an indicative selection from the *Vaughn* Index describes the withheld material as a "discussion of the subject matter expert's subjective findings, analysis, and proposed recommendation is response to specific detainee allegations." *Vaughn* Index at 6. That description is insufficiently specific for the Court to conclude that the quoted passage does not include inappropriately withheld severable factual material. And while the *Vaughn* Index also notes that the factual material in this section "is inextricably intertwined with the expert's proposed policy making recommendations," *id,* the Court presumes, based on Defendants' arguments, that Defendants' assessment of severability was informed by their erroneous assumption that the facts within the analysis of a detainee complaint are *per se* protected by the deliberative process privilege due to their selection by an Expert.

Accordingly, the Court defers adjudication on this aspect of the redactions to the Experts' Reports. The Defendants are directed to re-review the Experts' Reports and to release material as needed, consistent with this opinion. Defendants are further directed to update the *Vaughn* index to provide more specific justifications for each iteration of factual material withheld from the Experts' Reports, in keeping with this opinion.

### 5. The November 2, 2012 Memo and the Attachments to the Released Records

On its face, the redacted portions of the November 2, 2012 memo appear to comprise summaries of the recommendations provided by the Experts in their individual reports. *See* Released Records at 8 ("All of the recommendations are set forth below"). Given CLCR's established predecisional role in DHS's (and/or ICE's) deliberative process and the facially deliberative nature of recommendations provided by the Experts for the DHS's and ICE's

23

consideration, there is ample support for Defendants' redactions to this document. However, as discussed in §§ III(A)(3)(a)-(b), above, the Court is generally concerned that certain types of severable-factual material, agency working law, and adopted agency policy may have been redacted. While these concerns are lessened as to the November 12, 2012 Memo, which, unlike the Expert Reports, is not structured in relation to specified detainee complaints, in the interest of caution the Court directs Defendants to re-review the November 2, 2012 Memo consistent with this opinion. For the same reasons, the Court further directs the Defendants to re-review Attachment C to the Released Records. Released Records at 113-17.

However, there is no dispute that the redacted material in Attachment A to the Released Records was properly withheld. Released Records at 118-128. Further, those redactions appear, on their face, to consist largely of unchallenged personal identifiers, which were properly withheld under Exemption 6. Accordingly, summary judgment is granted to the Defendants as to Attachment A. *Id.*

**B. Exemption 6**

The State Department has withheld the identities and certain qualifications of the Experts pursuant to FOIA Exemption 6, as well as their contact information. Plaintiffs do not challenge Defendants' decision to withhold the Expert's contact information, Pls.' Br. (ECF No. 42) at 13 n.2, but object to Defendants' invocation to Exemption 6 to withhold the Experts' identities and professional backgrounds. For the reasons that follow, the Court agrees with Plaintiffs, and grants them summary judgment on this issue

FOIA Exemption 6 exempts from disclosure information from personnel, medical, or other similar files that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This exemption "is intended to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Wood v. Fed. Bureau of*

*Investigation*, 432 F.3d 78, 86 (2d Cir. 2005) (Sotomayor, J.) (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982)).  Exemption 6 is "specifically aimed at protecting the privacy of personal information in government records."  *Associated Press v. U.S. Dep't of Justice*, No. 06-cv-1758 (LAP), 2007 WL 737476, at *4 (S.D.N.Y. Mar. 7, 2007), *aff'd*, 549 F.3d 62 (2d Cir. 2008).

A court's inquiry regarding the applicability of Exemption 6 to withheld information is a two-step process.  *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014); *Wood*, 432 F.3d at 86.  First, the court "must determine whether the personal information is contained in a file similar to a medical or personnel file."  *Wood*, 432 F.3d at 86.  If the information is contained in a "similar file," the court must then "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the [information] would constitute a 'clearly unwarranted invasion of personal privacy.'"  *Id.* (quoting 5 U.S.C. § 552(b)(6)) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)).

### 1. "Similar Files"

The Released Records consist of memoranda, the Expert Reports, summaries of those reports, and documentation of detainee complaints.  These documents are "similar files" under FOIA.

"The phrase 'similar files' sweeps broadly and has been interpreted by the Supreme Court to mean 'detailed Government records on an individual which can be identified as applying to that individual.'"  *Cook*, 758 F.3d at 174 (quoting *Washington Post*, 456 U.S. at 602); *accord Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009).  As the Supreme Court has further explained, "the protection of an individual's right of privacy, which Congress sought to achieve by preventing the disclosure of [information] which might harm the individual, surely was not intended to turn upon the label of the file which contains the damaging information."  *Washington Post*, 456 U.S. at 601 (alteration in original).  Therefore, "a record need not be like a personnel file in the sense that it

is employment-related or a medical file in the sense that it contains a record of a person's medical history or medical treatment and care." *Cook*, 758 F.3d at 174. "Indeed, the record need not even be a 'file.'" *Id.*; *accord N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006-07 (D.C. Cir. 1990). Nor does the information in the file need to be "intimate"; "the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co.*, 920 F.2d at 1006).

The Released Records are "similar files" under Exemption 6. They contain the names, contact information, and professional backgrounds of subject matter experts hired by the CRCL through a competitive process to investigate and report allegation of misconduct at ECDC and, thus, can be identified as applying to those individuals. *See Cook*, 758 F.3d at 174; *see also Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46-47 (D.D.C. 2012) (finding that emails, which contained names, titles, offices, and phone numbers, qualified as similar files). Even where the records contain the names of individuals other than the authors and recipients, they nonetheless contain personally identifying information and are therefore similar files. *See Judicial Watch*, 875 F. Supp. 2d at 46 ("[F]iles containing private information on multiple individuals may also be protected." (citing *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006)). In light of this broad reading of the term "similar files," as well as the fact that these documents contained the names of agency officials, the Court finds that the gatekeeping requirement is satisfied.

## 2. Balancing of Interests

Having concluded that the withheld information is contained in files that qualify for exemption under Exemption 6, the Court must determine whether disclosure of the personal information would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6). In making this determination, the Court must balance the privacy concerns of the agency officials with the public's interest in disclosure. *Wood*, 432 F.3d at 87. However, "[t]he balancing

analysis for FOIA Exemption 6 requires that [courts] first determine whether disclosure of the files would compromise a substantial, as opposed to a *de minimis*, privacy interest, because if no substantial privacy interest is implicated FOIA demands disclosure." *Cook*, 758 F.3d at 176 (quoting *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012)).

An individual's privacy concerns "encompass[ ] all interests involving 'the individual's control of information concerning his or her person.'" *Wood*, 432 F.3d at 88 (quoting *Hopkins*, 929 F.2d at 87). "Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number." *Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011); *see Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (personal email addresses); *Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010) (names, ranks, companies, and addresses of Army personnel).

Where an agency has demonstrated a privacy interest sufficient to implicate Exemption 6, the burden falls to the requester to establish that disclosure "would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66. The public's interest in disclosure involves considerations of "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Wood*, 432 F.3d at 88 (quoting *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355-56 (1997)).

### a. Identities and Professional Backgrounds of the Experts

Defendants have failed to demonstrate a real risk of harassment should the identities and professional backgrounds of the Experts be released, leading the Court to conclude that any privacy interest at stake is slight. On the other hand, Plaintiffs have advanced palpable public interests in disclosure. Accordingly, for the reasons that follow, summary judgment is granted to Plaintiffs as to

the disclosure of the Experts' identities and professional backgrounds.[7]

Although courts read Exemption 6 broadly, *Washington Post*, 456 U.S. at 601, the exemption "does not categorically exempt individuals' identities," *Judicial Watch*, 449 F.3d at 153. "Names and other identifying information do not always present a significant threat to an individual's privacy interest[,]" and the threat to privacy "depends on the consequences likely to ensue from disclosure." *Wood*, 432 F.3d at 88 (citing *Ray*, 502 U.S. at 177). The Second Circuit has upheld the redaction of individuals' identities where public disclosure would expose those individuals to "embarrassment and harassment in the conduct of their official duties and personal affairs." *Halpern*, 181 F.3d at 296-97; *accord Wood*, 432 F.3d at 88. However, "an identifiable privacy interest in avoiding disclosures of information that could lead to annoyance or harassment . . . does not authorize a 'blanket exemption' for the names of all government employees in all records." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (citing *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980), and *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)). "To justify their Exemption 6 withholdings, the defendants must show that the threat to employees' privacy is real rather than speculative." *Id.* (citing *Dep't of the Airforce v. Rose*, 425 U.S. 352, 380 n.19 (1976)).

Defendants not provided evidence of a "real" threat of harassment to the Experts. Rather, the Holzer Declaration claims that "[t]he names and other personal information concerning the experts were withheld under Exemption 6 because of the Expert's privacy interest in avoiding *possible* harassment and unwanted contact from ICE staff, ECDC staff, or detainees who may have taken exception with how the on-site investigation was conducted with the expert's recommendations." Holzer Dec. ¶ 36 (emphasis added).

There mere possibility that the release of information could potentially lead to harassment is

---

[7] As noted above, Plaintiffs do not challenge the redaction of the Experts' contact information.

not evidence of a "real" threat of harassment. That Defendants have failed demonstrate that a "real" threat exists is plain on the face of their arguments:

> [I]t is readily apparent that the public release of the consultants' identities and contact information *could increase the possibility* of their being harassed. *See, e.g.*, *EPIC*, 384 F. Supp. 2d at 116-17 (observing that the "threat to the privacy of DHS and TSA personnel derives from the nature of their employment," because as "'advocates for security measures that may be unpopular,' DHS and TSA employees *are likely* to experience annoyance or harassment following the disclosure of their involvement").

Defs.' Reply (ECF No. 48) at 20 (emphasis added). Here, the difference between a mere potential "increase in the possibility" of harassment and the likelihood of harassment is the difference between a "real" threat and speculation. *See Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 100. This is especially so as Defendants have offered no cognizable explanation of why the Experts should be considered to work in "sensitive occupations" that makes them particularly "vulnerable to harassment or attack." *Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012).

Nor is the Court swayed by Defendants' contention that there is a risk of harassment by ICE staff, ECDC staff, or detainees who may have taken exception with how the on-site investigation was conducted with the expert's recommendations ("Internal Harassment") should the Expert's identities be released. Holzer Decl. ¶ 36. As Plaintiffs correctly point out, the Experts visited ECDC and interviewed detainees and staff as part of their investigative process, and there is no suggestion that they did not conduct that process openly. Given that any agency employee or detainee who interacted with an Expert presumably knew that Expert's identity and likely possessed at least a general understanding of that Experts' function, the Court has been presented with no basis upon which it could conclude that release of the Experts' identifies and professional backgrounds would increase the likelihood of Internal Harassment.

Also unavailing is the argument that releasing the Experts' identities would subject the Experts to outside harassment, from the media or through organized campaigns by activist groups such as certain Plaintiffs. Such harassment, if it were a real risk, could, in theory, make it difficult for CRCL to hire contractors to participate in on-site investigations in the future." Holzer Decl. ¶ 36. However, Plaintiffs have adduced evidence that the Experts refer to their work on their reports in their publicly available curricula vitae, expert reports, press releases, and media interviews. *See* Pls. Reply at 11-12 (collecting evidence). That is unsurprising, as the CRCL has stated that the Experts were selected through a competitive process, which would make public disclosure of their selection seem to be a feather in their cap, rather than a cause for concern. And Defendants have not provided the Court with any specific information as to material in the Reports which would tend to subject the Experts to harassment were their identities released.

Accordingly, it may be that whatever privacy interest the Experts have in controlling dissemination of their identities and professional backgrounds is *de minimis* and does not trigger the need to balance that interest with the public interest in disclosure. *See Cook*, 758 F.3d at 176; *Fed. Labor Rel. Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992) (noting that "the competing interests at stake must be balanced" only "once a more than *de minimis* privacy interest is implicated). The Court cannot conclude otherwise on this record. However, the Court need not determine that issue as, in any event, any privacy interest at stake is slight, and the interest in public disclosure articulated by the Plaintiffs is palpable.

The CRCL's core function is review of the DHS's compliance with civil rights and liberties. The Experts investigated detainee allegations of violations of their civil rights and liberties on behalf of the CRCL, provided their findings as to whether violations took place, and provided recommendations to promote future agency compliance. As the CRCL has contracted out part of

its responsibility to review alleged violations of civil rights and liberties, the public has a real interest in understanding whose judgment is being employed by the CRCL, and whether those contractors are qualified for the job. Decl. of Silky Shah, June 5, 2018 (ECF No. 45) ¶ 6. Furthermore, as the CLCR purports to hire their subject-matter experts through a competitive process, the public has an interest in ensuring that the CRCL is, in fact, hiring adequately qualified experts. *Id.* ¶ 7 (the public "has an interest in knowing whether the DHS is spending money on highly-qualified well respected experts, or partisan or insufficiently-trained consultants."). As the identity of the Experts and their professional backgrounds are relevant to evaluating the CRCL's functionality, as well as how the CRCL is spending taxpayer funds, disclosure here would further the "core purpose of the FOIA which is [to] contribute[e] significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

As the public interest in disclosure here is palpable, and the privacy interests at stake are, at most, slight, the Court finds that withholding the identities and professional backgrounds of the Experts pursuant to Exemption 6 is not justified here. Accordingly, summary judgment is granted to the Plaintiffs as to the identities and professional backgrounds of the Experts. As Plaintiff's have not challenged Defendants redaction of the Expert's contact information, that material is not affected by this holding, and may be withheld.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART without prejudice. Plaintiff's cross-motion is GRANTED IN PART and DENIED IN PART without prejudice.

Within one week of the date of this opinion and order, Defendants are directed to submit to the Court an unredacted version of the entirety of the Released Records. At present, the Court only expects to conduct *in camera* review of the Super-Recommendations Memo, but requests the entirety

of the Released Records to facilitate future *in camera* review, should such review prove necessary.

Defendants are further directed to re-review the Experts' Reports, the November 2, 2012 memo, and Attachment C to the Released Records, consistent with this opinion, to release additional material as appropriate, and make corresponding updates to the *Vaughn Index*. Additionally, Defendants are directed to release the identities and professional backgrounds of the Experts. The Court will set a deadline for the additional release of records and service of the updated *Vaughn* Index by subsequent order—which it expects to issue after the Court rules on its *in camera* review of the Super-Recommendations Memo.

Summary judgment is granted to the Defendants as to Attachment A to the Released Records. Released Records at 118-28. Defendants need not re-review either Attachment A, nor the Super-Recommendations Memo itself, nor update the *Vaughn* Index as to those materials.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 38 and 41.

SO ORDERED.

Dated: March 26, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge